MAGNOLIA PETROLEUM CO. *v.* LANGFORD.

4-8552                                    212 S. W. 2d 22

Opinion delivered June 28, 1948.

Substituted for one delivered May 31, 1948.

*Armistead, Rector & Armistead,* for appellant.

*George O. Patterson* and *Jack Langford,* for appellee.

SMITH, J. This is a suit to restrain appellant from using as a roadway a strip of land thirty feet wide, and four hundred sixteen feet long extending from McKennon Street south to Griffin Street in the City of Clarksville, Arkansas, which runs through block 46 of that city. This block fronts the right-of-way of the Missouri Pacific Railroad Company and according to a plat thereof, which was offered in evidence by appellee, has been subdivided into five lots. W. H. Langford, who owned the property in his lifetime, and who died in 1937, sold lots in this block in 1919, 1920, 1921 and 1926, this sale last mentioned having been made to appellant, Magnolia Petroleum Company. The other sales were made to the Standard Oil Company, the Sinclair Oil Company and the Continental Oil Company. The oil companies bought these lots to afford access to the railroad, their western boundary being the right-of-way of the railroad company.

All of these oil companies improved their respective lots by building storage tanks thereon. In 1922 or 1923, Langford laid off the strip of land here in question, extending through block 46, from McKennon Street to Griffin Street. A fence which had been in place along

748

the west line of the block was removed and rebuilt to form the eastern line of the strip of land in question, leaving a space of thirty feet between the fence as rebuilt and the east line of the Magnolia property. This suit was filed in 1946 to enjoin the use of the strip of land as a road, and from a decree granting that relief is this appeal.

It is conceded that no formal dedication of this strip of land as a street was ever made, but it was alleged, and we think the testimony shows, that the public acquired a right by prescription to use it as such.

The deed to the appellant refers to the property as a part of block 46 and presumptively the deeds to the other oil companies employed similar descriptions. At any rate, all the oil companies have for many years made the same use of their property and the enjoyment of this use involved the right to use the strip of land which is designated as a gravel street on the plat. The use of this strip of land which many witnesses referred to as a street is essential to ingress and egress from the front end of the Magnolia lot, although a side entry may be effected from that lot to the street south of it, and is indispensable to the owners of the inside or interior lots, and if the use of the street is enjoined, the owners of these lots cannot use them for the purposes for which they were purchased. Indeed it was conceded that the strip of land here in question was a way of necessity for the Sinclair property and also for the Continental property, and for that reason a non-suit was taken in the separate suits which had been filed against those companies.

Mr. Langford, the grantor in these deeds to the oil companies, above referred to, and from whom appellee inherited his title, died in 1937, and the son, as heir at law, brought this suit. A son-in-law of Mr. Langford, called as a witness for appellee, testified as follows:

He was asked: "Q. Do you recall any instances with reference to the opening of that roadway? A. I helped Mr. Langford—my father-in-law, the old man, you know

—measure that off. I don't know what year it was. If I remember right, it was about 1923—either 1922 or 1923; some time in there. In other words, it was after he sold the second lot. We went down there and I held the rod for him and he measured that thirty-foot roadway there. Q. All right. Now, when you say 'thirty-foot roadway', you mean thirty feet toward the east from the oil company properties running east and west? A. Yes, sir. Q. And did he also measure it from the north, from where McKennon Street now is to where Griffin Street now is? North and south along that tract . . . A. Yes. Q. . . . thirty feet wide across there. And you helped him measure it, is that correct? A. Yes, sir. Q. Do you know what his . . . what he was doing when he did that? A. Do you mean . . . Q. What? A. . . . for what purpose? Q. Yes. What his purpose was. What he was doing by doing that. A. I will state his purpose was to give these fellows that he sold lots to room to get in there. He said that he was going to . . ."

The court interrupted to say: "You needn't state what he said. If you know that's what the purpose was, you can answer it that way."

The witness had already answered.

The decree of the court is defended upon the ground that the use of the road or street was permissive and that it ran over land which was vacant and unoccupied and the insistence is that the owner had the right to withdraw this permission at his pleasure, and numerous cases including that of *Bridwell* v. *Ark. P. & L. Co.,* 191 Ark. 227, 85 S. W. 2d 712, which cites a number of other cases, is cited in support of that contention. There are points of distinction between this and the Bridwell case, *supra,* which renders that case inapplicable here. For instance, in the Bridwell case the fact is recited that the way used in that case was not upon a well established or defined route.

The contrary is true here. The road was well defined and had been used not only by the owners of the lots, but by the public generally for a period of more than

twenty years. It was shown that on certain occasions the road had been worked by both the city and the county, and its boundaries were always well defined. The city had filled holes in the street with rock and shale, and owners of the lots had also filled holes in the road as they developed. A number of witnesses, long-time residents of the city, testified that the public generally used the road for many purposes, not only in going to and from the property of the oil companies, but in crossing the railroad property at Griffin Street.

A witness was asked: Q. "Can you say how many automobiles or vehicles of one kind or another travel that roadway daily?" He answered: "Well, there is lots of traffic on it. I will say that. Q. Would you say there is as many as a hundred cars a day, or what? A. Now I don't know—I don't believe there is that many; sometimes there might be and sometimes there is not. It's just owing to the amount of traffic on the streets over here. Some use it delivering in their trucks; and then there was lots of traffic there when they had the scales over there, and the gin, and all. There was lots of cars and trucks used that. I couldn't tell you just how many; I wouldn't say. But there was lots of them used it." In other words, the traffic was formerly even heavier than it is now.

A ditch had been dug along the street and the manager of the light and water company in the city testified that he built a power line along the street in 1923, without asking or obtaining permission from appellee or his predecessor in title, and upon the assumption that the street was a public highway. That it was so used appears to be established not only by a preponderance of the testimony, but by the undisputed testimony. The court evidently so found for at the conclusion of the testimony the court said: "I believe the only question involved is whether it's been in adverse or permissive use during these years. As the court sees it, permissive use —don't put down what I am saying." The remainder of the court's conclusions were not reported.

It was held in the case of *Holthoff* v. *Joyce,* 174 Ark. 248, 294 S. W. 1006, to quote a headnote: "Where the owner of land divided it into lots and blocks, and sold lots by reference to a plat, he irrevocably dedicated the streets and alleys to public use."

While no plat of this land was ever filed of record, and no formal dedication of the land for public use was ever made, the deed to the Magnolia Company warranted the assumption that the strip of land had been dedicated to the public use. Indeed, the plaintiff's own testimony shows that the old fence was removed and rebuilt to apparently enclose the street, and that this was done to enable the purchasers of the lots to use the lots for their intended purposes.

Appellant bought its lots after the fence had been removed and rebuilt for the apparent purpose of providing egress and ingress to the lots, and if there was any intention not to dedicate the land to a public use, that intention was never disclosed and the public used the road without express permission to do so, and we think this use was hostile and adverse to any claim of right on the part of appellee or his predecessor in title.

If there were no formal dedication, and none was shown, yet we think appellant has by prescription the continuing right to use the road in going to and returning from the lot which it had bought from appellee's ancestor, and the decree will be reversed and the cause will be remanded with directions to dissolve the injunction and dismiss the suit as being without equity.